## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHERRINGTON ASIA LIMITED )
and BRIJ MOHAN PUNJ )
                                 )
               Plaintiffs, )
                                 )
v. )        Case No. 05-1214-EFM-DWB
                                 )
A & L UNDERGROUND, INC, )
*et al*., )
                                 )
              Defendants. )
_____ )

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion for Sanctions Against Defendant A&L Underground, Inc., for Its Discovery Abuses (Doc. 101) and supporting memorandum (Doc. 102), filed on December 5, 2008. Defendant A&L filed a Response (Doc. 104), and Plaintiff filed a Reply. (Doc. 107.) Because the motion requested only monetary sanctions for alleged discovery abuses and did not directly affect the pretrial conference or final trial preparation, the court took the motion under advisement, *see* Doc. 109, and has deferred ruling on the motion. The case has now been tried to a jury, a judgment entered, and post-trial motions have been filed. After review of the parties' filings concerning sanctions, the court is prepared to rule.

## PROCEDURAL BACKGROUND

When the case was first filed, counsel believed that they could proceed by means of informal discovery to obtain information necessary in order to attempt an early mediation. Therefore, in the initial Scheduling Order, the court only set certain minimal deadlines for the parties to accomplish this informal discovery. *See* Doc. 16. Both parties timely served initial disclosures under Rule 26(a)(1). (Doc No's 17, 18.) Subsequently, the parties advised the court that they needed to employ more formal discovery procedures, and the court set additional deadlines for such discovery. *See* Doc. 19. These deadlines were extended (Doc. 20), and on February 3, 2006, Plaintiffs served their first set of interrogatories and first document requests. (Doc. 21.)

The court continued to have regular telephone conferences with counsel to attempt to identify any discovery disputes that might have arisen. See Doc's 20, 24, 25, 29, 30, 32, 33, 34, 36, 47, 49 and 52. In the July 11, 2007 telephone conference, a deadline was set for briefs concerning an outstanding discovery dispute. (Doc. 52.) Both parties then submitted briefs concerning Plaintiffs' complaint that Defendants had simply executed a "document dump" of a computer hard drive which contained documents of A&L in connection with the Iraq project.

*See* Doc's 54, 55.[1]

After reviewing the briefs and hearing oral argument at a telephone
conference on July 31, 2007, the court entered an order directing Defendants

> to provide Plaintiff with a listing or index of those
> directories/files [on the computer hard drive] which
> contain documents responsive to Plaintiff's document
> requests, *i.e.,* documents related to the Iraq project. ***See***
> ***e.g., Oklahoma ex. rel. Edmondson v.Tyson Foods,***
> ***Inc.,*** 2007 WL 1498973 (N.D. Okla, May 17, 2007).
> That listing or index shall be produced on or before
> **August 31, 2007.** Defendant is not required to provide
> such a listing or index concerning the electronically
> stored information (e-mails) which were produced on
> compact discs. *See* Doc. 54, Ex. 2.

(Doc. 55 at ¶ 1.) On August 21, 2007, Defendants filed a Notice of Compliance

with the Court's Instruction Concerning Computer Hard Drive. (Doc. 57.)

The parties then proceeded to an early mediation which was not successful

(Doc. 60), and the court subsequently entered a Scheduling Order (Doc. 59) setting

out deadlines for discovery, expert reports, etc. The court continued to have

regular telephone status conferences with counsel, *see* Doc. 63, and the parties

continued with both written discovery and depositions. Plaintiffs noticed the Rule

---

[1] The court is uncertain whose computer hard-drive was produced initially. In his
30(b)(6) deposition, Mr. Gilstrap refers to the hard drive first produced to Plaintiffs as the
best compilation of all the documents and records that were kept in the field in Iraq.
(Doc. 107-1, Depo. Tr. at 15-16.) Gilstrap then indicates that Randy Duncan's and
Kenny Green's information is contained on the hard drive originally give to Plaintiffs.
(Doc. 107-1, Depo. Tr. at 17.)

30(b)(6) deposition of A&L on December 4, 2007 (Doc. 62), but amended that notice on January 18, 2008, and set the deposition for February 8, 2008. (Doc. 70.) Regular telephone status conferences with the court continued thereafter through August 22, 2008. *See* Doc No's , 74, 76, 77, 79, 84[2] and 88. The parties continued to exchange expert disclosures and continued with additional discovery both written discovery and depositions, including another Rule 30(b)(6) deposition notice to A&L for July 8, 2008. (Doc. 82.)

On December 5, 2008, Plaintiffs filed the present motion for sanctions and their supporting memorandum , and after responses and replies, the court took the motion under advisement. The final pretrial conference was held on June 30, 2009, and trial commenced on December 15, 2009. As previously noted, a jury verdict in favor of Plaintiffs was entered on December 22, 2009, and judgment was entered that day. (Doc. 150, 151.) A post-trial motion has been filed by Defendants seeking a new trial and stay of execution on the money judgment (Doc. 152), but that motion is not yet fully briefed or decided.

## SANCTION CLAIMS AND DEFENSES

---

[2] At the June 17, 2008 telephone conference (Doc. 84), the court set another telephone conference for June 30, 2008 in order to address any objections or disputes that might arise concerning the Rule 30(b)(6) deposition of A&L which was set for July 8, 2008. *See* Doc. 82. However, counsel notified the court by email on June 27, 2008, advising that they had resolved their disputes so there was no need for the June 30 telephone hearing.

Plaintiffs have divided their motion which seeks monetary sanctions of $56,119.11, into four discrete claims:

1.     For the computer hard drive "document dump" in 2007  - $22,588.00.

2.     For the February 8-9, 2008 Rule 30(b)(6) depositions  - $16,006.92

3.     For the July 7-8, 2008 Rule 30(b)(6) depositions   - $10,376.07

4.     For the cost of an accounting expert    -$  7,148.12

Simply stated, the requested sanctions for the "document dump" represent time spent by attorneys and legal assistants in an attempt to decipher the information included in this production by A&L.  Plaintiff's argue that the February 16, 2006 email from Richard Gilstrap reflects A&L's intent to "dump" documents from the computer hard-drive in such a form that would require Plaintiffs' counsel to expend time and expenses to locate relevant files, and that this intentional conduct justifies the imposition of sanctions.

The sanctions for both sets of Rule 30(b)(6) depositions basically revolve around additional costs and time incurred by Plaintiffs' counsel due to A&L's failure to timely provide requested financial documents related to the expenses and profits for the Iraq project so that Plaintiffs could determine the amount of their claims.  Plaintiffs recite difficulties concerning the Rule 30(b)(6) depositions of A&L, particularly the portion where Richard Gilstrap was the designated

representative of A&L, and claim that Gilstrap did not comply with his responsibilities to prepare to testify on behalf of the corporation as required by the rule.

Finally, the cost of the accounting expert also relates to time spent by attorneys, legal assistants and the accounting expert in trying to reconcile incomplete and contradictory financial information related to the expenses and profits in the Iraq project that was produced by A&L in a piecemeal fashion, long after it had originally been requested, and which allegedly were the result of A&L's purposeful withholding of key financial documents.

Defendant A&L claims that it produced the computer hard drive in precisely the format in which it was maintained in the normal course of business. It further argues that when the court in July 2007 required it to provide an index of the computer files and to isolate non-relevant files, it did so, and that it loaded on the hard-drive a search engine that allowed Plaintiffs to search the hard drive for words, phrases, etc. A&L understood that any issue about the hard-drive production was resolved when it complied with the court's order in August 2007, and Plaintiffs made no further objections or complaints about that topic until December 2008 when it filed the motion for sanctions. As to the Gilstrap email of February 15, 2006, A&L argues that a full reading of the email discloses that the

concern was about waiver of privileges in related proceedings that were contemplated against the general contractor, PIJV over change orders, and that Gilstrap never intended to obfuscate or obstruct Plaintiffs' discovery by producing the hard drive in its entirety.

As to the financial documents, A&L argues that it was not until the middle of 2008 that related disputes with PIJV and AMECO were resolved and that until this occurred, the anticipated costs and profits were in a "state of flux." They further argue that the provided financial information, mainly in the form of audited financial statements when those statements became available, and that any confusion about production of non-audited financial information from A&L's records resulted simply from "a lack of coordination within A&L" rather than any purposeful attempt to obstruct, impede or mislead Plaintiffs. In addition, A&L points out that to the extent that any problems were encountered in the Rule 30(b)(6) depositions of A&L, some of the problem resulted from the fact that the person most familiar with the Iraq project, Alex Lowe, had died shortly before the scheduled depositions, and that he would have been A&L's designated witness had he not died.

As to the cost of an accounting expert, A&L argues that it is normal to hire accounting experts in complicated commercial and construction cases therefore this

expert would have been hired by Plaintiffs in any event. A&L further argues that Mr. Fortner's report cites and relies upon audited financial information provided by A&L and that any confusion was based upon Mr. Fortner's conclusion that A&L's account records were "substandard" and the classification of costs in its report was "primitive."

## DISCUSSION

Plaintiffs' legal argument concerning the imposition of sanctions is brief and general in nature, with the request based upon Fed. R. Civ. P. 26(g)(3), Fed. R. Civ. P. 37, and the court's inherent power to impose sanctions against parties who respond unreasonably, recalcitrantly, abusively, or in bad faith to legitimate discovery requests.[3] (Doc. 102 at 20.) Similarly, A&L's response brief is focused on factual allegations with virtually no legal discussion concerning the grounds for imposition of sanctions.

One of the seminal cases regarding discovery sanctions in this district is *Starlight International, Inc. v. Herlihy*, 186 F.R.D. 626 (D. Kan. 1999), and 190

---

[3] While Plaintiffs reference the court's inherent power to impose sanctions, the court believes it is more appropriate to focus on traditional discovery rules allowing sanctions rather than to wander into the somewhat unchartered realm of the court's general inherent disciplinary powers. *Cf. Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987).

F.R.D. 587 (D. Kan. 1999).[4]  In the first ***Starlight*** opinion, Magistrate Judge

Rushfelt ruled on the applicability of sanctions for discovery abuses, and in the

second opinion he decided the amount of sanctions allowable and determined how

the sanctions should be allocated as between the party and the party's attorney.

 ***Starlight*** has two elements that are applicable in this case.  First, any claim

of sanctions under Rule 26(g) is limited in nature and applies only to written

discovery requests, responses or objections.  186 F.R.D. at 647.  If any certificate is

found to violate Rule 26(g)(1),[5] then Rule 26(g)(3) states that the court "must

impose an appropriate sanction on the signer, the party on whose behalf the signer

was acting, or both."  In this case, Plaintiffs claim that A&L made incomplete

disclosures of financial records that had been requested, but Plaintiffs never

specifically claim that certificates signed by A&L's counsel concerning responses

to Plaintiffs' discovery requests violated the provisions of Rule 26(g)(1).  In fact,

Plaintiffs specifically concede that A&L's counsel should not be subject to any of

the requested sanctions.  (Doc. 102 at 7 n. 2 and 20 n. 6.)  Because Plaintiffs have

---

 [4]  This court has previously had occasion to cite and rely on Judge Rushfelt's opinion in ***Starlight*** concerning Rule 30(b)(6) depositions. *See e.g.*, ***Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.***, No. 05-2164-MLB-DWB, 2007 WL 1054279 * 3, * 6 (D. Kan., Apr. 9, 2007).

 [5] Judge Rushfelt discussed the specific requirements of Rule 26(g)(2) in ***Starlight***. However, in the subsequent 2007 rules revisions, the majority of subsection (g)(2) was moved up and became part of the current Rule 26(g)(1).

not tied the conduct which they believes justifies sanctions directly to an improper certificate related to discovery responses, the court does not believe Rule 26(g) is applicable to the sanction claims in this case.

Second, *Starlight* stands for the proposition that producing an unprepared witness for a Rule 30(b)(6) deposition "is tantamount to a failure to appear at a deposition . . . ," and therefore constitutes sanctionable conduct under Fed. R. Civ. P. 37(d)(1)(A). *Starlight*, 186 F.R.D. at 639, *citing **United States v. Taylor***, 166 F.R.D. 356, 363 (M.D.N.C.), *aff'd* 166 F.R.D. 367 (1966). Therefore, if a Rule 30(b)(6) witness is not adequately prepared to testify about topics properly identified in a notice to take the deposition, the court may impose various types of sanctions, including the imposition of reasonable attorneys fees and expenses caused by the failure, unless the failure was "substantially justified." Fed. R. Civ. P. 37(d)(3). Those sanctions may be imposed on the party failing to act, the attorney advising the party, or both. *Id.*

The court has not identified any other provision of Rule 37 that appears applicable in this case, nor have Plaintiffs specifically identified any other sections of Rule 37 upon which they rely. Unlike *Starlight*, Plaintiffs here do not identify any failure of A&L to obey any specific discovery order issued by the court, therefore the provisions of Rule 37(b)(2) do not appear to be applicable. For

example, in connection with the "document dump" of the computer hard-drive,

Plaintiffs do not dispute that A&L complied with the court's July 31, 2007 order to

produce indices of files on the hard-drive.  Likewise, because Plaintiffs did not file

any motions to compel discovery, the provisions of Rule 37(a)(5) do not appear

relevant.[6]  It is possible that sanctions might be imposed on A&L under Rule

37(c)(1), on the basis that it failed to provide supplemental information required by

Rule 26(e).  Rule 26(e) requires a party who has responded to written discovery,

including a request for production of documents, to supplement or correct its prior

disclosure or response in a timely manner

> if the party learns that in some material respect the
> disclosure or response is incomplete or incorrect, and if
> the additional or corrective information has not otherwise
> been made known to the other parties during the
> discovery process or in writing. . . .

Fed. R. Civ. P. 26(e)(1)(A).  The difficulty in applying this section is that A&L

apparently did ultimately disclose the requested financial information, but only

after, and as a result of, the two sessions of Rule 30(b)(6) depositions noticed by

Plaintiffs.  Therefore, any issue about sanctions for failure to supplement appear to

be subsumed in the award of sanctions related to the Rule 30(b)(6) depositions.

---

[6] Plaintiffs state that they considered filing a motion to compel A&L to produce
the requested financial information, but they chose not to do so, believing that it would be
futile since A&L was contending that they had produced all requested documents.  (Doc.
102 at 9.)  Instead, Plaintiffs chose to proceed by use of Rule 30(b)(6) depositions.

After reviewing both Rule 26 and Rule 37, it therefore appears that the only appropriate basis for considering sanctions in this case involves the Rule 30(b)(6) depositions of A&L representatives. In considering whether to impose sanctions, a trial court must (1) identify the excess costs providing a basis for the sanctions, (2) identify the conduct leading to the sanctions in order to provide notice and allow a meaningful response from the sanctioned party, and (3) identify for a reviewing court the reason for the sanction. *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 372 F.3d 1186, 1190 (10th Cir. 2004) *citing Braley v. Campbell*, 832 F.2d 1504, 1513 (10th Cir. 1987) (dealing with sanctions under 28 U.S.C. § 1927 "or any other authority.").

**1.      The "document dump" of the computer hard-drive.**

Fed. R. Civ. P. 34(b)(2)(E) provides that in producing documents requested by another party, the producing party must produce the documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request.[7]  Plaintiffs' first set of document requests served on February 13, 2006, defined the term "document" to include documents "on computer storage media" and "electronic documents."  (Doc. 102-1 at 2 ¶ 5.)  The

---

[7]  The amendments to Rule 34 designed to specifically address electronic discovery and production were not enacted until 2006 and only became effective on December 1, 2006, several months after the requests and responses at issue.

first request then sought '[a]ll financial statements, summaries, projections and analysis of any nature regarding the Iraq project . . . ." (Doc. 102-1 at 3.) On March 20, 2006, A&L produced a complete copy of the entire hard-drive of a computer used in connection with the Iraq project.[8] (Doc. 102-2.) While there were clearly irrelevant documents located on the hard drive, A&L argues, and Plaintiffs do not dispute, that the production of the hard drive was in the same form in which these records were kept in the ordinary course of A&L's business, and that nothing was done to add irrelevant documents to the hard-drive for the purpose of frustrating Plaintiffs' examination.

When Plaintiffs were unable to easily and effectively access information on the computer hard drive, the issue was presented to the court. As a result, the court entered its July 31, 2007 Order (Doc. 55). In August 2007, A&L then produced a second copy of the computer hard drive which isolated irrelevant documents into a separate folder and which also included a search engine loaded on the copy which

---

[8] In seeking electronic discovery, courts have allowed a requesting party to obtain a "mirror image" of the producing parties' computers in certain circumstances in order to satisfy itself that all relevant documents have been obtained and produced. *See e.g.*, ***Balboa Threadworks, Inc. v. Stucky,*** No. 05-1157-JTM, 2006 WL 763668, at * 3 (D. Kan. Mar. 24, 2006) (ordering "mirror imaging" of computers and defining a "mirror image" as "a forensic duplicate, which replicates bit for bit, sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive."); S. Scheindlin and D. Capra, ELECTRONIC DISCOVERY AND DIGITAL EVIDENCE at 271-72 (West 2009) (discussing mirror imaging). As the court understands the facts, what was produced by A&L in this case was somewhat similar to a "mirror image" of the computer hard drive.

enabled anyone to search the contents of the hard-drive by word-search procedures. (Doc. 102-3.)  While the court, during subsequent telephone conferences, heard general complaints from Plaintiffs about production of various documents, no formal motions were filed with the court about A&L's method of complying with the court's July 3 (West 2009) 1, 2007 order, no motion to compel was filed, and the court assumed that this issue had been resolved.

Plaintiffs now urge that it was only when they found Gilstrap's February 15, 2006 email after searching the hard drive and CD's produced by A&L, that they became convinced that A&L had intentionally tried to obstruct Plaintiffs' discovery:

> [u]pon review of the hard drive and CDs, plaintiffs unearthed an email sent by Gilstrap [A&L's in-house counsel] on February 15, 2006; that email disclosed that A&L intentionally dumped unorganized documents on plaintiffs in order to increase plaintiffs' litigation expenses and to frustrate their ability to discover relevant information.

(Doc. 102 at 4, ¶ 7.)  Plaintiffs do not state precisely when their document review uncovered this email, but presumably it was shortly after the production by Defendants on August 21, 2007.  (Doc. 102 at 4-5.)  Certainly this email should have been discovered within a short time after the second hard-drive was produced in August 2007.  Plaintiffs did nothing, however, to bring this matter to the court's

attention until the present motion was filed in December 2008 --  approximately fifteen months after A&L had produced the second copy of the hard drive in response to the court's order.

Under these circumstances, where the court had continuous telephone conferences with counsel about discovery and the case status, Plaintiffs' motion for sanctions concerning the "document dump" simply comes too late.  While Gilstrap's email certainly does not indicate the type of cooperation that is expected by the court in discovery, the court will not impose sanctions on A&L in connection with the 2006-2007 production of the computer hard-drive.

## 2.    The two series of Rule 30(b)(6) depositions of A&L.

Frustrated by the inability to obtain financial documents concerning the costs and expenses on the Iraq project which they were certain had to exist, Plaintiffs sought to obtain this information by means of Rule 30(b)(6) depositions of A&L.  The first round of such depositions were the subject of a notice filed in December 2007, but this was amended and the date of depositions extended until February 2008.  (Doc. 70.)  A&L made no objections to the categories set out in the deposition notice for which Plaintiffs were seeking testimony from an A&L representative.  *See infra*, p. 4 at n. 2.

Topic 1 of the deposition notice sought testimony about efforts to locate and

produce documents previously requested by Plaintiffs in their initial interrogatories and document requests served in 2006 and subsequent requests served in 2007. A&L's representative to testify about Topic 1 (as well as all other topics on the notice) was Richard Gilstrap, the Vice-President, general counsel and secretary of A&L. (Doc. 107, Depo. Tr. at 4-5.) Gilstrap testified that he was trying to be the point person for A&L responsible for identifying, gathering and producing the documents requested by Plaintiffs in this case. (Doc. 107, Depo. Tr. at 14.) The court has reviewed the entire transcript of Mr. Gilstrap's February 8, 2008 deposition (Doc. 107-1.) Without reciting all of the testimony, it appears to the court that his preparation to act as a Rule 30(b)(6) witness for A&L was wholly inadequate and, as Plaintiff characterizes, somewhat "cavalier." The following excepts demonstrate this fact:

- Gilstrap testified that he had not previously been involved with a Rule 30(b)(6) deposition and that he talked only briefly with A&L's counsel about Rule 30(b)(6) depositions (Depo. Tr. at 34),[9] that in

---

[9] The court notes that Gilstrap is a licensed attorney who is admitted to practice in this court. While he did not appear as counsel of record in this case representing A&L, as an attorney he has the responsibility to assure that he and his client comply with the rules of practice. If he or A&L were unsure of what was required of them in connection with the Rule 30(b)(6) depositions, they should have consulted further with their retained counsel to assure that they were fully complying with the requirements place on witnesses appearing on behalf of a corporation in response to a Rule 30(b)(6) deposition notice.

16

preparation for the deposition, he did not go back through his emails to determine if he sent out a group email throughout the company to locate and preserve relevant emails (Depo. Tr. at 40), and he was vague about what he had done to search for relevant emails and who he may have contacted to obtain such emails (Depo. Tr. at 18-20);

- as to locating hard copy documents Gilstrap did not recall talking to other people at A&L about what documents they might have or asking them that question (Depo. Tr. at 46-47, 49), even though he acknowledged that A&L did not have centralized filing systems and people keep their own files (Depo. Tr. at 47), that he did not originally send out copies of Plaintiffs' document requests to others in the company (Depo. Tr. 48), that in preparing for the deposition he did not go back and look at the initial document requests (Depo. Tr. at 46);

- While he supposedly was able to testify about any of the topics in the deposition notice (Depo. Tr. at 4-5), as to many other documents, such as cost estimates and bid spreadsheets, Gilstrap indicated that Kurt Gowdy would have to answer questions about those. (Depo. Tr. at 64-73.)

On February 8, 2008, Plaintiffs also deposed Kurt Gowdy, the Vice President and Chief Operating Officer of A&L. Gowdy testified that A&L maintained a job cost history report by the week so the manager can see what has been done, and he thought such reports were prepared at least 80% of the time on the Iraq project. (Doc. 102-14, Depo. Tr. at 54-55.) He also testified that A&L had a jobs in progress report that shows for each of A&L's jobs the estimated contract amount, estimated gross profit, cost, actual billings and actual costs, that he was the person that generated those reports, and that these reports had not previously been produced to Plaintiffs. (Doc. 102-14, Depo. Tr. at 62-64.) Gowdy also testified that Richard Gilstrap had, at some time, talked to him about what type of financial documents A&L had concerning the Iraq project, that Gilstrap knew that the company had monthly job reports that showed expected revenue, expected cost and expected profit, but that Gilstrap said that those documents did not need to be produced because all that was required were audited financials and financials reports submitted to financial institutions. (Doc. 102-14, Depo. Tr. at 71-73.)

After these depositions, A&L produced a substantial number of documents which had been identified during the depositions and which were within the scope of Plaintiffs' first and second document requests, but which had not been previously produced. A&L stated that one box of documents that was

subsequently produced had been misfiled. (Doc. 102-17.) Other documents subsequently produced were located by counsel in this case because they had been produced by A&L in the case it brought against the general contractor, PIJV. (Doc. 102-21.)

Plaintiffs' review of the initial Rule 30(b)(6) depositions and the later-produced documents still left questions concerning the calculation of the profit for the Iraq project, and Plaintiffs' served another Rule 30(b)(6) notice on A&L on June 6, 2008. (Doc. 82.) Kurt Gowdy again testified on behalf of A&L at the deposition concerning how burden was calculated by A&L in the job cost history reports.[10]

After a review of all of the Rule 30(b)(6) testimony provided by the parties, the court concludes that A&L did not properly prepare its witnesses to testify about the topics designated in the deposition notices. Gilstrap's preparation was wholly inadequate to meet the duties of a Rule 30(b)(6) witness, and when considered in light of his February 16, 2006 email, suggests that he did not give proper attention

---

[10] Had A&L refused to produce a second round of Rule 30(b)(6) witnesses and Plaintiffs had been required to seek authority to take a second round by motion, the court would have undoubtedly allowed these additional depositions. Such relief is not unusual where the court finds that a corporation has not properly prepared its witnesses to testify on the designated topics. *See **Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.***, No. 05-2164-MLB-DWB, 2007 WL 1054279 * 7 (D. Kan., Apr. 9, 2007) (allowing an additional Rule 30(b)(6) deposition on certain topics).

to accumulation and production of documents in the first instance, and then
followed up by failing to properly prepare to testify as a Rule 30(b)(6) witness.
While Gowdy's testimony appears more forthcoming, it is apparent that there was
no coordination within A&L as between the witnesses being presented in
connection with the Rule 30(b)(6) deposition preparation.

As Judge Rushfelt noted in ***Starlight***, foremost among the purposes of Rule
30(b)(6) is the intent to curb the "bandying" by which officers or managing agents
of corporations are deposed in turn, but each disclaims knowledge of facts that are
clearly known to person in the organization and thereby known to the corporation.
186 F.R.D. at 638, *citing* ***Rainey v. American Forest & Paper Ass'n***, 26 F.Supp.2d
82, 95 (D.D.C. (1998) (quoting Fed. R. Civ. P. 30(b)(6) advisory committee notes
(1970 amend.))  To promote effective and efficient discovery regarding
corporations, the spokesperson for the corporation must be informed.  Rule
30(b)(6) implicitly requires the designated representative

> to review all matters known or reasonably available to it
> in preparation for the Rule 30(b)(6) deposition. This
> interpretation is necessary in order to make the
> deposition a meaningful one and to prevent the
> sandbagging of an opponent by conducting a half-hearted
> inquiry before the deposition but a thorough and vigorous
> one before the trial. This would totally defeat the purpose
> of the discovery process. The Court understands that
> preparing for a Rule 30(b)(6) deposition can be
> burdensome. However, this is merely the result of the

concomitant obligation from the privilege of being able
to use the corporate [or other organizational] form in
order to conduct business.

186 F.R.D. at 638, *citing **United States v. Taylor***, 166 F.R.D. 356, 362 (M.D.N.C.),

*aff'd* 166 F.R.D. 367 (1966).

Because the court concludes that A&L failed to properly prepare its Rule

30(b)(6) witnesses, this constitutes sanctionable conduct under Fed. R. Civ. P.

37(d)(1)(A).[11]

### 3.    Cost of an accounting expert witness.

Plaintiffs urge that they were required to hire an accounting expert witness

due to A&L's inadequate, confusing and contradictory production of documents

about the financial status of the Iraq project.  Plaintiffs acknowledge that this

witness, Richard Fortner, would probably have been retained to testify even had

---

[11]  The court is not unmindful of A&L's excuses for any problems concerning the
Rule 30(b)(6) depositions including (1) the fact that Alex Lowe was the most
knowledgeable about the Iraq project but had died before the scheduled deposition, (2)
that A&L was a small company not organized like an IBM and with only a small staff, (3)
that the project took place in a foreign country, and (4) that some of Plaintiffs' topics
and/or document requests were "vague."  The court has considered these arguments but
finds that none of these circumstances justifies the lack of preparation described above.
For example, had A&L needed additional time to prepare Rule 30(b)(6) witnesses after
Alex Lowe's death, it could have requested a continuance, but it did not.  And, if A&L
really believed that any of the deposition topics in the notice failed to identify the
proposed subjects of the Rule 30(b)(6) testimony with "reasonable particularity" as
required by Rule 30(b)(6), it could have objected or sought a protective order, but it did
not.

A&L's accounting information been produced earlier. For this reason, Plaintiffs' propose that the sanction should include only one-half of the attorney and legal assistant time associated with locating and retaining an accounting expert, and one-half of the expert's time in assisting Plaintiffs in understanding A&L's financial documents.

As to attorney or legal assistant time to <u>locate and retain</u> an expert accounting witness, the court cannot see how it can assess even one-half of that time as a sanction in this case. Plaintiffs do not explain why it took any longer to <u>locate or retain</u> the expert in this case than it would have taken in a normal case. The court will not assess any attorney or legal assistant time as a sanction in this case.

As to the time spent by the expert in assisting Plaintiffs to understand and critique A&L's accounting procedure or approach, the court cannot see how it can reasonably allocate the time spent by the expert between his time assisting in the location and identification of financial documents versus the time working on his expert opinion about the profit and loss in the Iraq project. To simply divide his time in half is too speculative. This is particularly true where the expert himself attributes much of his difficulties (therefore presumable much of his time) to A&L's "substandard" records and "primitive" classification of costs. *See* Doc.

104-6 at 7.  The court will not assess any of the expert witness time as a sanction in this case.

## AMOUNT OF SANCTIONS TO BE AWARDED

Judge Rushfelt painstakingly analyzed how to calculate the amount of sanctions in his second opinion in *Starlight*, 190 F.R.D. 587 (D. Kan. 1999).  Any determination of the proper monetary sanction requires consideration of three factors: (1) the reasonable expenses incurred as a result of the sanctionable misconduct, including reasonable attorneys fees; (2) the minimum amount necessary to deter future misconduct; and (3) the ability of the sanctioned party or attorney to pay the sanctions.  *White v. GMC*, 908 F.2d 675, 684-85 (10th Cir. 1990).

As to the reasonable expenses incurred by Plaintiffs as a result of A&L's conduct discussed above, Plaintiffs submitted detailed time and expense records as exhibits to their initial motion and memorandum.  *See* Doc. No's 102-30, 102-31, 102-32 and 102-33.  Because the court has ordered the imposition of sanctions only for the Rule 30(b)(6) deposition conduct, only two of those exhibits are applicable in determining the proper amount of sanctions -- Doc. Nos 102-31 and 102-32.

In responding to the motion for sanctions, A&L only contested the factual

basis for the imposition of sanctions; it never objected to Plaintiffs' calculation of the requested sanctions, the reasonable number of hours expended by Plaintiffs' counsel or the hourly rated used by Plaintiffs to calculate the attorneys fee requests. No one has requested an evidentiary hearing to address the reasonableness of the hourly rates or time spent by Plaintiffs' counsel.  The court has reviewed Plaintiffs' requested expenses and attorneys fees as set out in Doc. Nos 102-31 and 102-32, and finds that they are reasonable and that these expenses, <u>as prorated by counsel in its motion</u>, *see* Doc. 102 at 22,  properly reflect the reasonable expenses incurred by Plaintiffs as a result of the sanctionable conduct concerning the Rule 30(b)(6) depositions.

The court also concludes that the amount of expenses and attorneys fees being assessed by the court are the minimum amount necessary to deter future misconduct . Corporate parties must be aware that failure to properly prepare witnesses for Rule 30(b)(6) depositions unduly disrupts and prolongs any effective and efficient case management and that these failures will be met with appropriate sanctions.

Finally, no one has questioned the ability of A&L to pay the sanctions being imposed by the court in this case.  From evidence in several of the attachments to the parties' briefing of the sanctions motion, it appears that A&L made a

significant profit from the Iraq project after resolution of issues with PIJV and AMECO.

For the above reasons, the court therefore imposes monetary sanctions against Defendant A&L Underground, Inc. (but not against its counsel of record) related to the Rule 30(b)(6) misconduct previously described in this Memorandum and Order in the sum of $26,382.99. Payment of these sanctions shall be made within thirty (30) days of the date of this Memorandum and Order, and counsel for Defendant A&L shall file a certificate with the court reflecting when payment of the sanctions is made.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas on this 8th day of January, 2010.

       s/ DONALD W. BOSTWICK
DONALD W. BOSTWICK
United States Magistrate Judge